UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
SCOTT SANDERS,

                              Movant,

            –against–                          15-cv-2808 (LAK)
                                                                        (S1 12-cr-0574 (LAK))

UNITED STATES OF AMERICA.

                              Respondent
------------------------------------------x

**MEMORANDUM OPINION**
(Corrected)

Appearances:

        Todd Bussert
        *Attorney for Movant*

        Paul M. Krieger
        Assistant United States Attorney
        PREET BHARARA
        UNITED STATES ATTORNEY
        *Attorneys for Respondent*

LEWIS A. KAPLAN, *District Judge.*

        Movant Scott Sanders was convicted at trial of one count of conspiracy to commit mail and wire fraud, five substantive counts of mail fraud, and one count of aggravated identity theft. He was sentenced, on February 14, 2014, principally to concurrent terms of 97 months on the conspiracy and mail fraud counts plus a consecutive term of 24 months on the aggravated identity theft count for

2

an aggregate term of imprisonment of 121 months.[1]  He now attacks his conviction and sentence as products of the ineffective assistance of counsel ("IAC").  But these IAC claims arise in an unusual context.[2]

*Facts*

As will appear, it is unnecessary, at least for the present, to develop many of the operative facts relating to the prosecution, the conviction and the present motion.  It suffices for now to say only the following:

*The Indictment, the Rejected Plea Offer, and the Verdict*

Sanders initially was indicted on one count of conspiracy to commit mail and wire fraud, five substantive counts of mail fraud, and one count of aggravated identity theft.[3]  He was represented prior to and at trial by an attorney ("TC"), whose personal and professional relationships with Sanders dated back many years and who had represented Sanders in a previous and similar criminal case in which Sanders pleaded guilty.[4]  Prior to trial, Sanders rejected a plea offer that, if accepted, would have resulted in a sentencing guideline range of 33 to 41 months imprisonment and

---

[1] DI 120.  (Unless otherwise indicated, all references to the court file are to 12-cr-0574 (LAK).

[2] DI 139.

Sanders filed a notice of appeal following sentencing, but the appeal was dismissed.  *United States v. Sanders,* No. 14-716 (2d Cir. filed Apr. 3, 2014).

[3] DI 2.

[4] *United States v. Sanders,* 95-cr-66 (CLB).

a statutory maximum term of five years.[5] At trial, he was convicted on all counts[6] following jury deliberation of two hours or less. As the Court made clear following the verdict, it thought the government's case had been overwhelming.[7]

Sanders now argues that his conviction should be set aside because TC provided IAC in two respects. TC, according to Sanders, failed properly to advise him of (1) his sentencing exposure in the event of conviction, and (2) the strength of the government's case and the weakness of Sanders' intended defenses.[8] Had he been advised competently, Sanders claims, he would have accepted the plea offer rather than gone to trial.

*Sentencing and Related Events*

Following the denial of Sanders' post-verdict motions, another attorney ("SC") appeared as counsel to Sanders, initially for purposes of an appeal. TC was granted leave to withdraw. The case is rendered unusual by what transpired in the wake of the conviction and before and at the sentencing.

According to Sanders, SC suggested to Sanders that he should have accepted the government's plea offer and characterized TC's representation has having been "shameful." Sanders,

---

[5] DI 143-1, ¶¶ 18-19.

[6] Sanders was tried on a superseding indictment (S1) that was returned after the rejection of the plea offer. While there were minor differences, both the original and the superceding indictment in substance charged the same seven offenses. *Compare* DI 2 *with* DI 18. There has been no suggestion that any difference between the two is material to this motion.

[7] *See, e.g.,* Tr., Apr. 2, 2013] [DI 97], at 1381:22-23.

[8] DI 143, at 4, 14.

4

acting on SC's advice, however, then entered into a written agreement with the government (the "Sentencing Agreement") in which the parties stipulated to a guideline range of 145 to 175 months' imprisonment and Sanders (a) preserved his ability to argue for a below-guidelines sentence, and (b) waived any right to appeal from or collaterally attack any judgment imposing any sentence within the stipulated guideline range. Most importantly, the waiver expressly covered any claim of IAC "during any stage of the criminal proceedings in this matter (such as during plea discussions, at trial, or in connection with sentencing)."[9] Moreover, Sanders allocuted, prior to the imposition of sentence and under oath, that this waiver was knowing and voluntary and that he was "absolutely" satisfied with SC's representation.[10]

At sentencing, both SC and Sanders relied upon the Sentencing Agreement and Sanders' waiver of any right to appeal or to attack his conviction collaterally as demonstrating his remorse and acceptance of responsibility, and both argued on that basis for leniency. In sentencing Sanders (to 121 months imprisonment), the Court expressly noted that it had accepted that argument and relied upon it in imposing a sentence below the stipulated guideline range.[11]

---

[9] DI 143-11.

[10] Tr., Feb. 14, 2014 [DI 121], at 9:20-12:25.

[11] *Id.* at 15:19-24 ("Mr. Sanders, please rise for the imposition of sentence. The individual I see here this morning is not the one I saw at this trial. I saw a wiseguy who sat and smirked through the government's presentation in a case that was defensible, if at all, only on truly bizarre arguments."), 16:11-15 ("You have been superbly represented by [SC]. Nobody could have done it better. I am used to that with him. I am spoiled. *It has helped you. You are not going to be happy with the result anyway, but it has helped you.* I am telling you that.") (emphasis added).

5

*The Ineffective Assistance Claim as to SC*

Sanders doubtless recognizes that the Sentencing Agreement and Sanders' pre-sentence allocution likely are insurmountable barriers to his contentions that his trial counsel was ineffective in constitutional terms and that he would have accepted the government's plea offer had he been properly advised. So he contends that SC too was guilty of IAC, thus rendering unenforceable the waiver of the IAC claims with respect to trial counsel. The essence of the claim with respect to SC is that he

- "advised Mr. Sanders to sign the agreement despite knowing of [Sanders'] strong interest and desire to pursue an ineffective assistance claim against . . . [TC], and despite possessing evidence independent of Mr. Sanders and his wife that support the contemplated claims for relief,"

- "did not research the merits of Mr. Sanders's contemplated 2255 action before advising that he sign the agreement," and

- "recommended Mr. Sanders sign the agreement so as to help facilitate a sentence well below what the Court imposed, that is, Mr. Sanders relied on unfounded assurances regarding the outcome that would be secured by signing the agreements."[12]

In response to the present motion, the government has submitted an affirmation by SC. He states that a lawyer whom he respects (and who represented Sanders' wife during the government's investigation) told SC that the lawyer personally heard TC tell Sanders that the government's 33-to-41 month offer was unreasonable and that Sanders would do better at trial. SC added, however, that he

---

[12] DI 143, at 20.

6

then spoke to TC and his partner ("TC2"), both of whom told SC that Sanders had been unwilling to accept any deal that would expose him to a sentence of more than one year of imprisonment. SC advised Sanders that Sanders would be unlikely to prevail on an IAC claim as, to a large extent, it would be Sanders' word against those of TC and TC2 but counseled that the threat of an IAC claim might be usable as a "bargaining chip" with the government. With Sanders' approval, SC says, he approached the government with a proposal to reduce Sanders' guideline range in return for Sanders waiving his right to post-conviction relief and paying substantial restitution. His "hope was also that by waiving his right to seek post-conviction relief, Mr. Sanders would show the Court that he had accepted responsibility, albeit belatedly, for his crimes."[13] This in due course led to the Sentencing Agreement and to the sentencing described above, which reflected the Court's acceptance of the argument and the imposition of a lower sentence that otherwise would have been imposed.

*Discussion*

*The Applicable Standard*

There are two fundamental obstacles to Sanders' quest for relief from the judgment of conviction. First, the Court may not properly consider Sanders' collateral attack on the judgment, whether on the basis of TC's alleged IAC or otherwise, unless Sanders' waiver of the right to make any such attack were avoided. Even if Sanders could avoid the waiver, he then would have to prevail on the merits of the IAC claim with respect to TC. So the necessary starting point is with the claim that Sanders' waiver of the right to collaterally attack the judgment is unenforceable.

---

[13] SC Aff. [DI 149-2] ¶ 5.

There are a number of lesser conflicts between SC's affirmation and Sanders' account. None is material at this moment though that may change as the matter proceeds.

7

The waiver of the right to appeal a criminal judgment is enforceable if it is knowing and voluntary.[14] As the Second Circuit has said, moreover, "[k]nowing and voluntary appellate waivers included in plea agreements must be enforced because, if they are not, 'the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants.'"[15] By analogy, the same is true of waiver of the right to collaterally attack the judgment or sentence in a criminal case.[16] To be sure, such a waiver does not waive a challenge to the validity of the process by which such a waiver was obtained.[17] Thus, the waiver in the Sentencing Agreement is fatal to his Section 2255 motion unless the process by which that waiver was obtained was constitutionally infirm, as Sanders claims was the case by virtue of the alleged IAC by SC.

To prevail on an IAC claim, the claimant must demonstrate both "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense."[18] The attorney must be shown to have committed errors "so serious that counsel was not functioning as the

---

[14] *E.g., United States v. Monzon,* 359 F.3d 110, 116 (2d Cir. 2003).

[15] *United States v. Rosa,* 123 F.3d 94, 97–98 (2d Cir.1997) (quoting *United States v. Yemitan,* 70 F.3d 746, 748 (2d Cir.1995)); *see also United States v. Salcido–Contreras,* 990 F.2d 51, 53 (2d Cir.1993) ("In no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless.").

[16] *E.g., Frederic k v. Warden, Lewisburg Corr. Fac.,* 308 F.3d 192, 195 (2d Cir. 2002); *Garcia Santos v. United States,* 273 F.3d 506, 508-09 (2d Cir. 2001); *Powell v. United States,* No. 05-cv-0163 (LAK), 2005 WL 2427888, at *1 (S.D.N.Y. Sept. 30, 2005). *see United States v. Monzon,* 359 F.3d 110, 117 (2d Cir.2004).

[17] *Frederick,* 308 F.3d at 195.

[18] *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *accord, e.g., Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

'counsel' guaranteed the defendant by the Sixth Amendment."[19] In assessing an attorney's conduct, the reviewing court must engage in a "highly deferential" review of that conduct and must indulge "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[20] Rather than "grade counsel's performance," it limits itself to determining "whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process."[21] The second *Strickland* prong requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[22]

In light of these controlling standards, Sanders' waiver is enforceable unless he establishes that (1) SC, in advising Sanders to enter into the Sentencing Agreement and thus to waive his IAC claim with respect to TC, committed errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment,"[23] and (2) "there is a reasonable probability that, but for [SC's allegedly] unprofessional errors, the result of the proceeding would have been different"[24] – in other words, that Sanders would not have waived his IAC claim with respect to

---

[19] *Strickland*, 466 U.S. at 687.

[20] *Id.* at 689.

[21] *Id.* at 696;  see also *United States v. Aguirre*, 912 F.2d 555, 561 (2d Cir.1990).

[22] *Strickland*, 466 U.S. at 694; accord, *United States v. Tarricone*, 996 F.2d 1414, 1417 (2d Cir. 1993).

[23] *Strickland*, 466 U.S. at 687.

[24] *Id.* at 694; accord *United States v. Tarricone*, 996 F.2d 1414, 1417 (2d Cir. 1993).

TC's performance.[25] If he fails on either branch of this analysis, his Section 2255 motion must be denied without consideration of the merits his IAC claim concerning TC.

*Sanders' Request for an Evidentiary Hearing*

Sanders contends that he is entitled to an evidentiary hearing, even going so far as arguing – quite wrongly – that the government has acknowledged the propriety of a hearing to address "'whether [TC]'s representation did not satisfy the Strickland standard.'"[26] But it is unnecessary to cross that bridge at this stage.

As an initial matter, a Section 2255 movant need not:[27]

> always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim, no matter how vague, conclusory, or palpably incredible his allegations may be. The language of the statute does not strip the district courts of all discretion to exercise their common sense. Indeed, the statute itself recognizes that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner.

By parity of reasoning, it is not always necessary to conduct a full hearing on every issue pertinent to

---

[25] That of course would have entailed proceeding to sentencing without benefit of the Sentencing Agreement and judgment and making a § 2255 motion based on TC's alleged IAC.

[26] DI 154, at 9-10 (purporting to quote DI 149 at 22 n.10)

While the internally quoted words appear in the government's memorandum, Sanders has taken them entirely out of context. The government's position in fact is that the Court should deny Sanders' motion without any evidentiary hearing because the record now is entirely sufficient to warrant enforcement of Sanders' appellate and habeas waiver but that it requests "an opportunity to address in writing, or at a minimum a hearing" whether TC's representation satisfied *Strickland in the event the appellate and habeas waiver were not enforced.* DI 149 at 22 n.10.

[27] *Machibroda v. United States,* 368 U.S. 487, 495 (1962) (quoted in *Chang v. United States,* 250 F.3d 79, 85 (2d Cir. 2001)).

10

a Section 2255 motion when the resolution of one or more threshold issues could dispose of a motion and thus moot other issues.[28]

In this case, a necessary (but not sufficient) precondition to Sanders' avoiding his appellate and habeas waiver is his establishment of his contention that SC's performance with respect to that waiver fell below the minimal standard articulated in *Strickland*. Accordingly, the Court will conduct a hearing on that issue which, at least in the first instance, will be limited to hearing testimony from SC, TC and TC-2.. The parties would be well advised to address the following matters: (1) SC's knowledge or understanding of any advice given by trial counsel to Sanders while the plea offer could have been accepted concerning (a) Sanders' sentencing exposure if he were convicted at trial, and (b) the relative strengths and weaknesses of the government and defense cases in the event the case went to trial, (2) the discussion(s) between SC, on the one hand, and/or TC and TC2, on the other, concerning the quality and effectiveness of their representation of Sanders. They of course will be free to address other matters subject to the limited scope of this hearing.

The Court's deputy will be in touch with counsel to schedule the hearing.

SO ORDERED.

Dated:      November 10, 2015
Corrected:  November 12, 2015

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[28] *See also Puglisi v. United States,* 586 F.3d 209, 216 (2d Cir. 2009).